**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMERICAN CENTER FOR LAW AND JUSTICE, | ) ) ) | |
| 201 Maryland Avenue, NE Washington, DC  20002 | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case Action No. |
| UNITED STATES DEPARTMENT OF STATE, | ) ) ) | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| The Executive Office Office of the Legal Adviser, Suite 5.600 600 19th Street NW Washington DC 20522 | ) ) ) ) ) | |
| Defendant. | ) ) | |

**COMPLAINT**

Plaintiff American Center for Law and Justice ("ACLJ"), by and through counsel, brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, challenging the failure of Defendant, the United States Department of State ("DOS"), to respond to Plaintiff's FOIA request within the statutorily prescribed time period, and seeking the disclosure and release of agency records improperly withheld by Defendant. In support thereof, Plaintiff alleges and states as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 552(a)(6)(C)(i), and 28 U.S.C. § 1331, because this action arises under FOIA, and Plaintiff has exhausted its administrative remedies.

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 552(a)(4)(B).

3.     This Court has authority to award injunctive relief pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 2202.

4.     This Court has authority to award declaratory relief pursuant to 28 U.S.C. § 2201.

## PARTIES

5.     Plaintiff, with offices at 201 Maryland Avenue, N.E., Washington, DC 20002, is a not-for-profit 501(c)(3) organization dedicated to the defense of constitutional liberties secured by law. Plaintiff's mission is to educate, promulgate, conciliate, and where necessary, litigate, to ensure that those rights are protected under the law. Plaintiff also regularly monitors governmental activity with respect to governmental accountability. Plaintiff seeks to promote integrity, transparency, and accountability in government and fidelity to the rule of law. In furtherance of its dedication to the rule of law and public interest mission, Plaintiff regularly requests access to the public records of federal, state, and local government agencies, entities, and offices, and disseminates its findings to the public.

6.     Defendant is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1) and is headquartered at 2201 C Street, N.W., Washington, DC 20520. Defendant is in control and possession of the records sought by Plaintiff.

## FACTUAL ALLEGATIONS

7.     "Pursuant to State Department FOIA regulation 22 C.F.R. § 171.4(b)," Plaintiff set forth a "Background address[ing] 'the subject, timeframe, names of any individuals involved, a contract number (if applicable), and reasons why the requester believes the Department may

have records on the subject of the request.'" Pl.'s FOIA Request Ex. A, 2-6 (quoting 22 C.F.R. §

171.4(b)). Said Background follows herein at paragraphs 8–26.

### Background of FOIA Request at Issue

8.      Article I of the Genocide Convention establishes a duty for contracting states to "prevent

and to punish" genocide. Article 8 articulates one of the mechanisms available to effectuate that

duty: "Any Contracting Party may call upon the competent organs of the United Nations to take

such action" as "appropriate for the prevention and suppression of acts of genocide." Convention

on the Prevention and Punishment of the Crime of Genocide, art. II, Dec. 9, 1948, 78 U.N.T.S.

277 [hereinafter Genocide Convention]. While, the United States has reserved its own definition

of genocide for purposes of the Convention, *see* 18 U.S.C. § 1091(a) (2012), the definition

contained in both the Convention and the United States' statute have been satisfied.

9.      In her book originally published in 2002, "A Problem from Hell: America and the Age of

Genocide," U.S. Permanent Representative to the United Nations Ambassador Samantha Power

wrote that "[t]he United States had never in its history intervened to stop genocide, and in fact

rarely even made a point of condemning it as it occurred." SAMANTHA POWER, "A PROBLEM

FROM HELL": AMERICA AND THE AGE OF GENOCIDE 512-13 (2013).

10.     In 2014, Defendant issued two reports: one regarding atrocities occurring in Syria; and

one regarding atrocities in Iraq. BUREAU OF DEMOCRACY, H.R. AND LAB., U.S. DEP'T OF STATE,

SYRIA 2014 INTERNATIONAL RELIGIOUS FREEDOM REPORT 2 (2014); BUREAU OF DEMOCRACY,

H.R. AND LAB., U.S. DEP'T OF STATE, IRAQ 2014 INTERNATIONAL RELIGIOUS FREEDOM REPORT 3

(2014).

11.     On August 7, 2014, Secretary of State John Kerry declared that "ISIL's campaign of

terror against the innocent, including Yezidi and Christian minorities, and its grotesque and

targeted acts of violence bear all the warning signs and hallmarks of genocide." *There is Only One Word for What is Happening: Genocide*, KOFC.ORG (Mar. 10, 2016), http://www.kofc.org/en/news/releases/one-word-genocide.html.

12.     On December 7, 2015, the United States Commission on International Religious Freedom ("USCIRF"), released the following statement:

> USCIRF calls on the U.S. government to designate the Christian, Yazidi, Shi'a, Turkmen, and Shabak communities of Iraq and Syria as victims of genocide by ISIL.  USCIRF also urges American and other world leaders to condemn the genocidal actions and crimes against humanity of ISIL that have been directed at these groups and other ethnic and religious groups.

Press Release, U.S. Comm'n on Int'l Religious Freedom, USCIRF Statement on the Designation of Victims of Genocide, Persecution, and Crimes Against Humanity in Syria and Iraq (Dec. 7, 2015),          http://www.uscirf.gov/news-room/press-releases/uscirf-statement-the-designation-victims-genocide-persecution-and-crimes.

13.     On February 5, 2016, Plaintiff sent a letter to Secretary Kerry regarding legal analysis of the law of genocide as applied to atrocities being committed by ISIS against Christians, and urging Secretary Kerry to formally recognize the ISIS atrocities against Christians as genocide. Letter from Jay Alan Sekulow et al., Am. Ctr. for Law & Justice, to John F. Kerry, U.S. Secretary of State (Feb. 5, 2016), http://media.aclj.org/pdf/Kerry-ltr-02052016-(1)_Redacted.pdf.

14.     On March 9, 2016, the Knights of Columbus and In Defense of Christians submitted a joint report,  with thorough data, including first-hand accounts of genocide survivors and relatives of genocide victims, provided by the Shlomo Organization for Documentation, to Secretary Kerry. GENOCIDE AGAINST CHRISTIANS IN THE MIDDLE EAST, KNIGHTS OF COLUMBUS AND IN DEFENSE OF CHRISTIANS (Mar. 9, 2016), http://indefenseofchristians.org/wp-content/uploads/2016/03/Genocide-report.pdf.

15.     On March 14, 2016, the U.S. House of Representatives *unanimously* passed a Concurrent

Resolution, proclaiming:

> (1) the atrocities perpetrated by ISIL against Christians, Yezidis, and other religious and ethnic minorities in Iraq and Syria constitute *war crimes, crimes against humanity, and genocide*;
>
> . . . .
>
> (3) the member states of the United Nations should coordinate urgently on measures to prevent further war crimes, crimes against humanity, and genocide in Iraq and Syria, and to punish those responsible for these ongoing crimes, including by the collection and preservation of evidence and, if necessary, the establishment and operation of appropriate tribunals.

H.R. Con. Res. 75, 114th Cong. (1st Sess. 2015), *available at*

https://www.congress.gov/bill/114th-congress/house-concurrent-resolution/75/text. According to

the unanimous Resolution:

> "ISIL specifically targets these religious and ethnic minorities, intending to kill them or force their submission, conversion, or expulsion";
>
> "religious and ethnic minorities have been murdered, subjugated, forced to emigrate, and subjected to grievous bodily and psychological harm, kidnapping, human trafficking, torture, and rape";
>
> "ISIL engages in, and publicly argues in favor of, the sexual enslavement of non-Muslim women, including pre-pubescent girls";
>
> "ISIL atrocities against Christians, Yezidis, and other minorities have included mass murder, crucifixions, beheadings, rape, torture, enslavement, the kidnaping of children, and other violence deliberately calculated to eliminate their communities from the so-called Islamic State."

*Id.*

16.     On March 17, 2016, Secretary Kerry publically pronounced his "judgment" that:

> Daesh is responsible for genocide against groups in areas under its control, including Yezidis, Christians, and Shia Muslims. Daesh is genocidal by self-proclamation, by ideology, and by actions – in what it says, what it believes, and what it does. Daesh is also responsible for crimes against humanity and ethnic

cleansing directed at these same groups and in some cases also against Sunni
Muslims, Kurds, and other minorities.

John Kerry, *Remarks on Daesh and Genocide*, U.S. DEP'T OF STATE (Mar. 17, 2016),

http://www.state.gov/ secretary/remarks/2016/03/254782.htm.

17.     Secretary Kerry continued: "We know that in Mosul, Qaraqosh, and elsewhere, Daesh

has executed Christians solely because of their faith; that it executed 49 Coptic and Ethiopian

Christians in Libya; and that it has also forced Christian women and girls into sexual slavery."

*Id.*

18.     In conclusion, Secretary Kerry stated: "[T]oday, I say to all our fellow citizens and to the

international community, we must recognize what Daesh is doing to its victims. We must hold

the perpetrators accountable. And we must find the resources to help those harmed by these

atrocities be able to survive on their ancestral land." *Id.*

19.     And: "Naming these crimes is important. But what is essential is to stop them. That will

require unity in this country and within the countries directly involved, and the determination to

act against genocide, against ethnic cleansing, against the other crimes against humanity must be

pronounced among decent people all across the globe." *Id.*

20.     On April 26, 2016, Secretary Kerry reiterated his March 17, 2016, statements, in public

remarks delivered at Rice University:

> In the time since, Daesh has continued to target religious minorities. They
> continue to kill Yezidis because they are Yezidis, Christians because they are
> Christians, Shia because they are Shia. In my judgment – and I registered this
> last month – Daesh is responsible for committing genocide against these groups
> in areas under its control.

John Kerry, *Remarks at Rice University's Baker Institute for Public Safety*, U.S. DEP'T OF STATE

(Apr. 26, 2016), http://www.state.gov/secretary/remarks/2016/04/256618.htm.

21.     On May 23, 2016, Plaintiff sent a second letter to Secretary Kerry, thanking him for declaring ISIS's acts as acts of genocide and requesting that he use his position to mobilize the international community to stop the genocide and protect the victims.   Letter from Jay Alan Sekulow & Robert W. Ash, Am. Ctr. for Law & Justice, to John F. Kerry, U.S. Secretary of State (May 23, 2016), http://media.aclj.org/pdf/KerryLetter5.23.16_Redacted.pdf.

22.     On June 6, 2016, Plaintiff sent a letter to United States Permanent Representative to the U.N., Ambassador Samantha Power, thanking her for her consistent stance against genocide and urging her to "continue and intensify" efforts to mobilize international community to stop the genocide against Christians and others by ISIS. Letter from Jay Alan Sekulow & Robert W. Ash, Am. Ctr. for Law & Justice, to Samantha Power, U.S. Permanent Representative to the U.N. (June 6, 2016), http://media.aclj.org/pdf/SignedLetter-Power-06.06.2016_Redacted.pdf.

23.     In its May 23, 2016, letter to Secretary Kerry and its June 6, 2016, letter to Ambassador Power, the ACLJ specifically requested that Defendant raise the issue of ISIS genocide against Christians and other religious and ethnic minorities at the 32nd Session of the United Nations Human Rights Council in June 2016.

24.     In its "Fact Sheet: Key U.S. Outcomes at the UN Human Rights Council 32nd Session," no mention is made of any effort to raise or advance the issue of ISIS genocide against Christians in Syria (or elsewhere). *Fact Sheet: Key U.S. Outcomes at the UN Human Rights Council 32nd Session*, U.S. DEP'T OF STATE (July 6, 2016), https://geneva.usmission.gov/2016/07/07/fact-sheet-key-u-s-outcomes-at-the-un-human-rights-council-32nd-session/.

25.     Nor was any such mention made in statements delivered by U.S. Representative to the Human Rights Council Ambassador Keith Harper. Instead, Ambassador Harper specifically omitted any reference to "genocide" and "Christian" as victims thereof. Statement by the

Delegation of the U.S., Ambassador Keith Harper, U.S. Representative to the Human Rights Council, Interactive Dialogue on the Commission of Inquiry on the Syrian Arab Republic, 32nd Session of the UN Human Rights Council, Geneva (June 21, 2016), *available at* https://geneva.usmission.gov/2016/06/21/u-s-welcomes-the-on-going-critical-work-of-the-commission-of-inquiry-on-syria/.

26.     Plaintiff explained in its FOIA request, sent to Defendant on July 18, 2016, attached hereto as Exhibit A and incorporated by reference as if fully set forth herein[1]:

> With these facts in mind, and as stated above, this Request seeks records containing and demonstrating any and all efforts made by the DOS or any of its components to: honor the terms of the Genocide Convention; carry out Secretary Kerry's declaration that "[w]e must hold the perpetrators accountable," "help those harmed by these atrocities be able to survive on their ancestral land," and "stop" the "crimes"; and/or otherwise counter, oppose or respond to the ISIS genocide of Christians. Such efforts include, but are not limited to, communications or briefings with individual, institutional and/or sovereign members of the international community, as well as within the DOS or between DOS officials and other governmental officials.

Pl.'s FOIA Request Ex. A, 6.

27.     In its FOIA request sent July 18, 2016, Plaintiff sought the following records:

> 1.      Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing or regarding in any way genocide, atrocities, crimes against humanity, war crimes, human rights violations, or any other type of crime or violation of any law or norm, perpetrated by ISIS, a.k.a. ISIL and/or Daesh, members or followers thereof, or associated extremists, against Christians *in Iraq*.

> 2.      Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing or regarding in any way genocide, atrocities, crimes against humanity, war crimes, human rights violations, or any other type of crime or violation of any law or norm, perpetrated by ISIS, a.k.a. ISIL and/or Daesh, members or followers thereof, or associated extremists, against Christians *in Syria*.

---

[1] For purposes of minimizing unnecessary attachments to filings, and consistent with LCvR 5.1(e), Plaintiff has omitted from the attached Exhibit A the Memorandum in Support of Requested Fee Waiver and Expedited Processing.

3.      Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing or regarding in any way genocide, atrocities, crimes against humanity, war crimes, human rights violations, or any other type of crime or violation of any law or norm, perpetrated by ISIS, a.k.a. ISIL and/or Daesh, members or followers thereof, or associated extremists, against Christians *in any other location, region, territory, or nation*.

4.      Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing, reflecting, expressing, or regarding in any way any DOS effort or action to stop, slow, counter, mitigate or otherwise oppose the genocide, atrocities, crimes against humanity, war crimes, human rights violations, or any other type of crime or violation of any law or norm, perpetrated by ISIS, a.k.a. ISIL and/or Daesh, members or followers thereof, or associated extremists, against Christians *in Iraq, Syria, or any other location, region, territory, or nation*.

5.      Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing, reflecting, expressing, or regarding in any way any DOS effort or action to protect, provide or grant relief, aid or assist Christian victims of genocide, atrocities, crimes against humanity, war crimes, human rights violations, or any other type of crime or violation of any law or norm, perpetrated by ISIS, a.k.a. ISIL and/or Daesh, members or followers thereof, or associated extremists, *in Iraq, Syria, or any other location, region, territory, or nation*.

6.      Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing or regarding in any way Secretary Kerry's judgment that Christians were victims of genocide perpetrated by ISIS, a.k.a. ISIL and/or Daesh, members or followers thereof, or associated extremists, as set forth in his *Remarks on Daesh and Genocide*, U.S. DEP'T OF STATE (Mar. 17, 2016), http://www.state.gov/ secretary/remarks/2016/03/254782.htm.

7.      Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, containing, referencing, discussing or regarding in any way any United States or DOS obligation, policy, procedure, plan, decision, action, guidance, directive, memorandum, curriculum, goal, objective, fact sheet, talking points, statement or press release, or any discussion thereof, with respect to ISIS, a.k.a. ISIL and/or Daesh genocide that resulted from, gave force to, implemented, or manifested any statement expressed by Secretary Kerry in his *Remarks on Daesh and Genocide*, U.S. DEP'T OF STATE (Mar. 17, 2016), http://www.state.gov/ secretary/remarks/2016/03/254782.htm.

8.      Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, containing, referencing, discussing or regarding in any way any United States or DOS obligation under the Convention on the Prevention and Punishment of the Crime of Genocide, art. II, Dec. 9, 1948, 78 U.N.T.S. 277, or 18 U.S.C. § 1091(a) (2012), with respect to ISIS, a.k.a. ISIL and/or Daesh genocide, resulting from Secretary Kerry statements in his *Remarks on Daesh and Genocide*, U.S. DEP'T OF STATE (Mar. 17, 2016), http://www.state.gov/ secretary/remarks/2016/03/254782.htm.

9.      Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing or regarding in any way any statement, finding, or recommendation by USCIRF concerning "genocidal actions and crimes" against humanity, *including Christians*, and other ethnic and religious groups, committed by ISIS, a.k.a. ISIL and/or Daesh. Press Release, uscirf.gov/news-room/press-releases/uscirf-statement-the-designation-victims-genocide-persecution-and-crimes.

10.     Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing or regarding in any way any statement, finding, resolution or recommendation contained in the United States House of Representatives' Concurrent Resolution 75. H.R. Con. Res. 75, 114th Cong. (1st Sess. 2015), available at https://www.congress.gov/bill/114th-congress/house-concurrent-resolution/75/text.

11.     Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing, containing or regarding in any way any United States or DOS policy, procedure, plan, decision, action, guidance, directive, memorandum, curriculum, goal, objective, fact sheet, talking points, statement or press release, or any discussion thereof, with respect to ISIS, a.k.a. ISIL and/or Daesh genocide occurring *in Iraq*.

12.     Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing, containing or regarding in any way any United States or DOS policy, procedure, plan, decision, action, guidance, directive, memorandum, curriculum, goal, objective, fact sheet, talking points, statement or press release, or any discussion thereof, with respect to ISIS, a.k.a. ISIL and/or Daesh genocide occurring *in Syria*.

13.     Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing, containing or regarding in any way any United States or DOS policy, procedure, plan, decision, action, guidance, directive, memorandum, curriculum, goal, objective, fact sheet, talking points, statement or press release, or any discussion

thereof, with respect to ISIS, a.k.a. ISIL and/or Daesh genocide occurring *in any other location, region, territory, or nation*.

14.     Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing or regarding in any way *the decision not to address, raise, condemn, or otherwise mention in written or oral form at the 32nd Regular Session of the U.N. Human Rights Council* genocide, atrocities, crimes against humanity, war crimes, human rights violations, or any other type of crime or violation of any law or norm, perpetrated by ISIS, a.k.a. ISIL and/or Daesh, members or followers thereof, or associated extremists, against Christians *in Syria*.

15.     Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, at, within or in connection with the Permanent Mission of the United States of America to the United Nations and Other International Organizations in Geneva, referencing, discussing, reflecting, expressing, or regarding in any way genocide, atrocities, crimes against humanity, war crimes, human rights violations, or any other type of crime or violation of any law or norm, perpetrated by ISIS, a.k.a. ISIL and/or Daesh, members or followers thereof, or associated extremists, against Christians *in any location, region, territory, or nation*.

16.     Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing or regarding in any way *whether or not to address, raise, condemn, or otherwise mention* in *written or oral form at any United Nations function, Assembly, Session, Council, Committee, Organ or Office* genocide, atrocities, crimes against humanity, war crimes, human rights violations, or any other type of crime or violation of any law or norm, perpetrated by ISIS, a.k.a. ISIL and/or Daesh, members or followers thereof, or associated extremists, against Christians *in any location, region, territory, or nation*.

17.     Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing, reflecting, expressing, or regarding in any way a referral by the United Nations Security Council to the International Criminal Court or the establishment of a tribunal for prosecution of ISIS, a.k.a. ISIL and/or Daesh, members or followers thereof, or associated extremists, for committing genocide, atrocities, crimes against humanity, war crimes, human rights violations, or any other type of crime or violation of any law or norm, *against Christians or any other victims in any location, region, territory, or nation*.

18.     Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing or regarding in any way *whether or not to address, raise, condemn, or otherwise mention in written or oral form to any representative, mission, diplomat,*

*delegation or dignitary of any nation* genocide, atrocities, crimes against humanity, war crimes, human rights violations, or any other type of crime or violation of any law or norm, perpetrated by ISIS, a.k.a. ISIL and/or Daesh, members or followers thereof, or associated extremists, against Christians *in any location, region, territory, or nation*.

19.    Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing or regarding in any way *whether or not to address, raise, condemn, or otherwise mention in written or oral form to any representative, officer or member of a Non-Governmental Organization (NGO)* genocide, atrocities, crimes against humanity, war crimes, human rights violations, or any other type of crime or violation of any law or norm, perpetrated by ISIS, a.k.a. ISIL and/or Daesh, members or followers thereof, or associated extremists, against Christians *in any location, region, territory, or nation*.

20.    Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing or regarding in any way *whether or not to address, raise, condemn, or otherwise mention in written or oral form to any representative, mission, diplomat, delegation or dignitary of any nation* genocide, atrocities, crimes against humanity, war crimes, human rights violations, or any other type of crime or violation of any law or norm, perpetrated by ISIS, a.k.a. ISIL and/or Daesh, members or followers thereof, or associated extremists, against Christians *in any location, region, territory, or nation*.

21.    Any and all records, communications or briefings prepared, reviewed, sent or received by any DOS official, staff, or employee, referencing, discussing, reflecting, expressing, or regarding in any way any United States or DOS policy, procedure, plan, decision, action, guidance, directive, memorandum, curriculum, goal, objective, fact sheet, talking points, statement or press release, or any discussion thereof, with respect to receiving, processing, granting relief, aiding or assisting Christian refugees or Internally Displaced Persons (IDP) fleeing or otherwise affected by the ISIS, a.k.a. ISIL and/or Daesh genocide occurring *in Iraq, Syria, or any location, region, territory, or nation*.

22.    Any other record, communications or briefings of any kind or nature that references, discusses, or regards, in any way and for any purpose, genocide, atrocities, crimes against humanity, war crimes, human rights violations, or any other type of crime or violation of any law or norm, perpetrated by ISIS, a.k.a. ISIL and/or Daesh, members or followers thereof, or associated extremists, against Christians *in any location, region, territory, or nation*.

Pl.'s FOIA Request Ex. A, 7-11.

28.     Plaintiff specified in its FOIA request that:

> For purposes of this Request, the term "record" is "any information" that qualifies under 5 U.S.C. § 552(f), and includes, but is not limited to, the original or any full, complete and unedited copy of any log, chart, list, memorandum, note, correspondence, writing of any kind, policy, procedure, guideline, agenda, handout, report, transcript, set of minutes or notes, video, photo, audio recordings, or other material. The term "record" also includes, but is not limited to, all relevant information created, stored, received or delivered in any electronic or digital format, e.g., electronic mail, instant messaging or Facebook Messenger, iMessage, text messages or any other means of communication, and any information generated, sent, received, reviewed, stored or located on a government *or private* account or server, consistent with the holdings of *Competitive Enterprise Institute v. Office of Science and Technology Policy*, No. 15-5128 (D.C. Cir. July 5, 2016), https://www.cadc.uscourts.gov/internet/opinions.nsf/75450CA390CB52C985257 FE7005038BD/$file/15-5128-1622973.pdf (rejecting agency argument that emails on private email account were not under agency control, and holding, "If a department head can deprive the citizens of their right to know what his department is up to by the simple expedient of maintaining his departmental emails on an account in another domain, that purpose is hardly served.").

Pl.'s FOIA Request Ex. A, 6.

29.     Plaintiff specified in its FOIA request that:

> For purposes of this Request, the term "briefing" includes, but is not limited to, any in-person meeting, teleconference, electronic communication, or other means of gathering or communicating by which information was conveyed to one or more person.

Pl.'s FOIA Request Ex. A, 6.

30.     Plaintiff specified in its FOIA request that:

> For purposes of this Request, the term "DOS official" includes, but is not limited to, any person who is (1) employed by or on behalf of the DOS, any Mission of the United States, or any Delegation of the United States, in any capacity; (2) contracted for services by or on behalf of the DOS, any Mission of the United States, or any Delegation of the United States, in any capacity; or (3) appointed by the President of the United States to serve in any capacity at or within the DOS, any Mission of the United States, or any Delegation of the United States; all without regard to the component, bureau, or office in which that person serves.

Pl.'s FOIA Request Ex. A, 6-7.

31.    Plaintiff specified in its FOIA request that:

For purposes of this Request, all sources, documents, letters, reports, articles and press releases cited in this Request are incorporated by reference as if fully set forth herein.

Pl.'s FOIA Request Ex. A, 7.

32.    Plaintiff specified in its FOIA request that:

For purposes of this Request, the term "ISIS, a.k.a. ISIL and/or Daesh" includes, but is not limited to:

a.    "al-Qaeda in Iraq," the "Islamic State of Iraq," "ISI," the "Islamic State of Iraq and Syria," "Islamic State in Iraq and al-Sham," "ISIS," the "Islamic State," "IS," the "Islamic State of Iraq and the Levant," "ISIL," "al-Dawla al-Islamiya al-Iraq al-Sham," "Daesh," the "Caliphate";

b.    any other individuals or organizations associated with ISIS, a.k.a. ISIL and/or Daesh;

c.    any other individuals or organizations pledging allegiance to ISIS, a.k.a. ISIL and/or Daesh; and/or,

d.    any other spelling, translation or iteration of any term, name or description referencing or associated with ISIS, a.k.a. ISIL and/or Daesh.

Pl.'s FOIA Request Ex. A, 7.

33.    Plaintiff specified in its FOIA request that:

For purposes of this Request, the timeframe of records requested herein is January 1, 2013, to the date this Request is processed.

Pl.'s FOIA Request Ex. A, 7.

34.    In its FOIA request, Plaintiff stated:

[I]f this Request is denied in whole or in part, ACLJ requests that, within the time requirements imposed by FOIA, you support all denials by reference to specific FOIA exemptions and provide any judicially required explanatory information, including but not limited to, a *Vaughn* Index.

Pl.'s FOIA Request Ex. A, 12.

35.    In its FOIA request, Plaintiff stated:

Moreover, as explained in an accompanying memorandum, the ACLJ is entitled to expedited processing of this Request as well as a waiver of all fees associated

with it. The ACLJ reserves the right to appeal a decision to withhold any information sought by this request and/or to deny the separate application for expedited processing and waiver of fees.

Pl.'s FOIA Request Ex. A, 12.

36.     By letter dated August 4, 2016, attached hereto as Exhibit B and incorporated by reference as if fully set forth herein, Defendant acknowledged it received Plaintiff's FOIA request on July 19, 2016. Def.'s Acknowledgement Letter Ex. B, 1. Defendant advised it had assigned Case Control Number F-2016-08550. Def.'s Acknowledgement Letter Ex. B, 1.

37.     In its letter dated August 4, 2016, Defendant stated that it "will begin the processing of your request based upon the information provided in your communication." Def.'s Acknowledgement Letter Ex. B, 1. It did *not* include a date on which the Defendant would provide an actual response to the request.

38.     In its letter dated August 4, 2016, Defendant stated:

> Unusual circumstances (including the number and location of Department components involved in responding to your request, the volume of requested records, etc.) *may* arise that would require additional time to process your request.

Def.'s Acknowledgement Letter Ex. B, 1.

39.     In its letter dated August 4, 2016, Defendant stated:

> We will notify you as soon as responsive material has been retrieved and reviewed.

Def.'s Acknowledgement Letter Ex. B, 1.

## Defendant's Approach to Records Sought and
## History of Responding to FOIA Requests

40.     Defendant has a reputation for flaunting and disregarding its public accountability and FOIA obligations. For example, Plaintiff filed a prior FOIA lawsuit against Defendant for its failure to respond as required by statute to Plaintiff's lawful FOIA requests concerning

Defendant's deletion of a portion of official Daily Press Briefing video. *See* Complaint, 16-cv-1365-RC. Prior to receiving Plaintiff's FOIA request, Defendant officially described the deletion or alteration of its video record as a "glitch." *See* Complaint, 16-cv-1365-RC, ¶13. After receiving Plaintiff's FOIA request, Defendant changed its story and conceded the alteration was "deliberate." *Id.*

41.     In that case, after it received Plaintiff's FOIA request, Defendant publically announced on June 9, 2016, that it would not comply with requests from the House Oversight Committee for emails concerning the deleted or altered video, unilaterally deciding, apparently, that the emails it reviewed "aren't relevant." Julian Hattem, *State Dept. Not Giving Emails to Congress in Probe Over Edited Video*, THE HILL (June 9, 2016, 2:56 PM), http://thehill.com/policy/national-security/282919-state-dept-not-giving-emails-to-congress-in-probe-over-edited-video.

42.     Recent news reports highlighted a Department of Justice report which found that Defendant took 111 days on average to respond to FOIA requests in 2014, far longer than any other agency and the time specified by statute, and that only 10 percent of Defendant's FOIA officers took required training, the worst attendance record of any major agency. Kathryn Watson, *State Dept is the Slowest Fed Agency to Process FOIA Requests*, DAILY CALLER (May 9, 2016 2:53 PM), http://dailycaller.com/2016/05/09/state-dept-is-the-slowest-fed-agency-for-foia-responses/; *see also*, Sarah Westwood, *State Department Worst of All Agencies at Answering FOIAs, Study Shows*, WASH. EXAM. (Mar. 10, 2015, 1:10 PM), http://www.washingtonexaminer.com/state-department-worst-of-all-agencies-at-answering-foias-study-shows/article/2561299 (relaying findings supporting Defendant's grade of "F" on Center for Effective Government's annual FOIA report card).

43.     Defendant's reputation concerning its response to FOIA requests is well known. *See* Andrew Desiderio, *Associated Press Scolds State Dept for Slow Document Production*, MEDIAITE (Nov. 16, 2015, 4:31 PM), http://www.mediaite.com/online/associated-press-scolds-state-dept-for-slow-document-production/ (describing the Associated Press's harsh criticism of Defendant for slow response to Associated Press FOIA requests); AP, *Judge Scolds State Department Official for Slow Response to Request for Records from Clinton Tenure*, FOX NEWS (Jul. 30, 2015), http://www.foxnews.com/politics/2015/07/30/judge-scolds-state-department-official-for-slow-response-to-records-request.html.

44.     Perfectly accentuating Defendant's utter disregard for its FOIA obligations, the letter it sent to Plaintiff in response to Plaintiff's instant FOIA request is essentially and substantively *identical* to the response it sent to Plaintiff in response to Plaintiff's prior FOIA request that resulted in 16-cv-1355-RC.

## CAUSE OF ACTION
### Violation of the Freedom of Information Act

45.     Plaintiff realleges and incorporates by reference paragraphs 1 through 44 of this Complaint as if fully stated herein.

46.     The federal FOIA establishes a 20-day deadline by which a federal agency must make and issue a decision regarding compliance with a request for records made pursuant to the statute. 5 U.S.C. § 552(a)(6)(A)(i).

47.     Pursuant to 5 U.S.C. § 552(a)(6)(A), Defendant was required to determine whether to comply to Plaintiff's request within twenty (20) days, excepting Saturdays, Sundays, and legal public holidays. Pursuant to this same provision, Defendant also was required to notify Plaintiff immediately of the determination, the reasons therefore, and the right to appeal any adverse determination to the head of the agency.

48.     Plaintiff sent its FOIA request to Defendant's Office of Information Programs and

Services, the component of Defendant designated by Defendant to receive FOIA requests

directed to Defendant, and Plaintiff's FOIA request was received by that component on July 19,

2016.

49.     Pursuant to 5 U.S.C. § 552(a)(6)(A), the 20-day period commenced on July 19, 2016.

Excluding weekends, Defendant was required to make its determination and provide Plaintiff

with the requisite notifications by August 16, 2016.

50.     As of the date of this Complaint, Defendant has failed to notify Plaintiff of any

determination about whether Defendant will comply with Plaintiff's FOIA request, the reasons

for any such determination, or Plaintiff's right to appeal any adverse determination to the head of

the agency (with the exception of Defendant's denial of Plaintiff's expedited processing request,

which Defendant denied in its letter dated August 4, 2016, and as to which Defendant did notify

Plaintiff of its appeal rights as to that specific denial).

51.     As of the date of this Complaint, Defendant has failed to produce any records responsive

to the request, indicate when any responsive records will be produced, or demonstrate that

responsive records are exempt from production.

52.     Defendant has not requested information from the Plaintiff that would toll the 20-day

period as contemplated by 5 U.S.C. § 552(a)(6)(A)(i)(I).

53.     FOIA permits a federal agency, in unusual circumstances, to extend the 20-day response

deadline for a period not to exceed ten (10) additional working days. 5 U.S.C. § 552(a)(6)(B).

54.     While Defendant, in its letter of August 4, 2016, did vaguely assert with boilerplate

language that "unusual circumstances . . . may arise that would require additional time to process

your request," Def.'s Acknowledgement Letter Ex. B, Defendant did not assert that any unusual

circumstances had actually arisen or identify "the date on which a determination is expected to be dispatched," 5 U.S.C. § 552(a)(6)(B)(i). As such, Defendant has not implicated the tolling provision set forth in 5 U.S.C. § 552(a)(6)(B)(i).

55.     There are no "unusual circumstances" that justify Defendant's prolonged delay in responding to Plaintiff's lawful FOIA request.

56.     Plaintiff has a statutory right to have Defendant process Plaintiff's FOIA request in a timely manner and in accordance with the requirements set forth in 5 U.S.C. § 552(a)(6).

57.     Defendant is unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. § 552.

58.     FOIA provides a cause of action for a complainant from whom a federal agency has withheld requested records. 5 U.S.C. § 552(a)(4)(B).

59.     Through its continued delay in responding to Plaintiff's lawful request for records, and its improper withholding of such requested records, Defendant has failed to comply with FOIA's prescribed deadlines for responding to a request for records and has violated Plaintiff's statutory rights.

60.     Pursuant to 5 U.S.C. § 552(a)(6)(C), because Defendant failed to comply with the time limit set forth in 5 U.S.C. § 552(a)(6)(A), Plaintiff is deemed to have exhausted any and all administrative remedies with respect to its FOIA request.

61.     Plaintiff is being irreparably harmed by reason of Defendant's unlawful withholding of requested records, and Plaintiff will continue to be irreparably harmed unless Defendant is compelled to conform its conduct to the requirements of the law.

## PRAYER FOR RELIEF

62.    WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against

Defendant, and provide Plaintiff with the following relief:

(a)    An Order that Defendant conduct a diligent search for any and all responsive records to Plaintiff's FOIA request and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA request;

(b)    An Order that Defendant produce, by a date certain, any and all non-exempt records responsive to Plaintiff's FOIA request and a *Vaughn* index of any responsive records withheld under claim of exemption;

(c)    An Order enjoining Defendant from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA request;

(d)    A declaratory judgment that Defendant's actions violated Plaintiff's statutory rights under 5 U.S.C. § 552;

(e)    An Order awarding to Plaintiff its reasonable attorneys' fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and,

(f)    An Order granting to Plaintiff all further relief to which Plaintiff may be entitled.

Dated: August 30, 2016.                    Respectfully submitted,

THE AMERICAN CENTER FOR LAW AND JUSTICE

/s/ Jay Alan Sekulow
JAY ALAN SEKULOW
   (D.C. Bar No. 496335)
   *COUNSEL OF RECORD*
STUART J. ROTH (D.C. Bar No. 475937)
COLBY M. MAY (D.C. Bar No. 394340)
CRAIG L. PARSHALL[*]
BENJAMIN P. SISNEY[*]
201 Maryland Avenue, N.E.
Washington, D.C.  20002
Telephone: (202) 546-8890
Facsimile: (202) 546-9309
Email: sekulow@aclj.org
*Counsel for Plaintiff*

---

[*]Motion for Admission *Pro Hac Vice* pending.